Carl D. Crowell, OSB No. 982049
email: crowell@kite.com
Jonathan van Heel, OSB No. 095349
email: jvh@kite.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VOLTAGE PICTURES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>JIM CHOI,<br><br>    Defendant. | Case No.: 13-cv-00855<br><br>COMPLAINT;<br>EXHIBITS 1-2<br><br>COPYRIGHT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Voltage Pictures, LLC, complains and alleges as follows:

JURISDICTION AND VENUE

1. This is a suit for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. ("The Copyright Act").

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

///

///

///

## PARTIES

### THE PLAINTIFF

4.  Plaintiff Voltage Pictures, LLC ("Voltage" / "Plaintiff") is a limited liability company with principal offices in Los Angeles, California that produces, markets and distributes motion pictures including the subject work in this matter, a motion picture titled *Maximum Conviction*.

### The Rights of the Plaintiff

5.  The motion picture in this case, titled *Maximum Conviction*, has been registered with the United States Copyright Office by the author, Maxcon Productions Inc. Registration No. PAu 3-647-070, 2012.

6.  The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

7.  The motion picture is currently offered for sale in commerce.

8.  By an assignment recorded with the U.S. Copyright Office, Voltage Pictures, LLC has been assigned rights in the motion picture and has been assigned all rights to bring, prosecute, defend and appear in all suits, actions and proceedings concerning any piracy, infringement or misappropriation of the motion picture and to make any claims as the owner.

9.  Under the Copyright Act, Voltage Pictures, LLC is the proprietor of all right, title, and interest in the motion picture, including the right to sue for past infringement.

10. Under the Copyright Act, Voltage Pictures, LLC possesses the exclusive rights to reproduce the motion picture and to distribute the motion picture to the public.

11. Plaintiff's motion picture is easily discernible as a professional work as it was created using professional performers, directors, cinematographers, lighting technicians, set designers and editors and with professional-grade cameras, lighting and editing equipment.

12.     Defendant had notice of plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

## THE DEFENDANT

13.     Defendant is a participant in a peer-to-peer file sharing network.

14.     Internet Service Provider ("ISP") Century Link, on information and belief, assigned Internet Protocol ("IP") address 71.222.126.243 to Jim Choi ("Jim Choi" / "Choi" / "Defendant") from October 26, 2012 17:32:17 UTC through November 19, 2012 04:31:52 UTC.  Ex. 2, p. 2.

15.     Defendant Jim Choi is an attorney with offices at 16323 SE Stark Street # 3, Portland, Oregon, 97233.

16.     The defendant was observed infringing plaintiff's motion picture at 07:34:35 PM UTC on November 12, 2012, using IP address 71.222.126.243 which was assigned by the ISP Century Link.  Ex. 1, p. 5, item no. 50.

17.     IP address 76.115.46.230 has been associated with a vast amount of infringing activity. A limited sample of the titles exchanged on peer-to-peer networks and linked to this IP address is shown on Exhibit 1.

## BACKGROUND

## PEER-TO-PEER INTERNET PIRACY

18.     As noted by Senator Levin in Congressional hearings on peer-to-peer internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines.  In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing.  It hurts artists, the music industry, the movie industry, and others

involved in creative work. And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

19. Peer-to-peer networks, at least in their most common form, are computer systems that enable internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the internet.

20. The particular peer-to-peer protocol at issue in this suit is the BitTorrent protocol.

21. To use BitTorrent, a user intentionally downloads a program that they install on their computer called a "client." The BitTorrent client is the user's interface during the downloading/uploading process. The client may be free, supported by advertising, offer upgrades or add on services for a fee, or a combination of several options.

22. Users then intentionally visit a "torrent site" or network site to find media or content available for download, often using a standard web browser.

23. A torrent site is often an advertisement-revenue based or subscription-supported index of media or content being made available by other users on the network and maintains a listing of movies and television programs among other copyrighted content.

24. A user then uses the torrent site to connect with other users and exchange content though the BitTorrent protocol often with many users at the same time.

25. Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

26. Many parties, and possibly defendant, have paid money to facilitate or permit increased access to content which has been made available without authorization.

27.     To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available through increasing the number of member peers and thus the desirability of their clients and networks. To accomplish this they reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

28.     A significant element of the BitTorrent model is that those who participate and download movies not only share and upload movies with others, but participants are often rewarded through various means based on the volume and availability of content participants in turn provide to the network. In sum, there is a feedback incentive for participants as they obtain not only the benefit of their pirated copy of a movie, but they obtain other benefits by increasing the availability of pirated content to others.

29.     As such, there are a growing number of users that participate in peer-to-peer networks and receive personal gain or compensation in that the networks they use reward those who provide large numbers of files for upload to others. Many parties, and possibly defendant, have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including plaintiff's movie.

30.     Another growing element of the BitTorrent model is that users are able to attach advertising to the files they upload through various means allowing them to generate revenue through the propagation of the titles they make available to others.

31.     In this case, plaintiff's motion picture as copied and distributed by defendant is associated with the "TORRENTING.COM" branding in the title. Ex. 1, p. 5, item no. 50.

32.     Identical branding can be observed on item no. 57. Ex. 1, p. 5, item no. 50.

33.     Similar branding for third parties can also be observed on items nos. 5, 7, 20, 28, 31, 32, 41, 56 and 64 of Exhibit 1.

34. On information and belief, defendant's activities of unlicensed copying and distributing plaintiff's motion picture included co-opting plaintiff's motion picture and distributing it branded with the third party brand "TORRENTING.COM."

35. Co-opting and distributing pirated content for the promotion of third parties is regularly observed in the conduct associated with IP address 71.222.126.243 and can be seen in titles advertising and associating with the web sites in the item numbers referenced in paragraph 33 above. See Ex. 1.

36. In information and belief, Choi is either directly affiliated with TORRENTDAY.COM and other third party sites as a subscriber and contributor or indirectly promoting the activities of TORRENTDAY.COM and other third party sites in an effort to profit from piracy through the copying and distribution of plaintiff's motion picture.

37. While it may or may not be that defendant in this case is personally and directly generating revenue or benefit from their conduct, defendant's conduct furthered such efforts on behalf of others as he downloaded and then re-published plaintiff's pirated content used to provide advertising to third parties.

38. The use of BitTorrent does more than cause harm through the theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and a system of rewards and compensation to the participants each of whom contribute to and further the enterprise.

39. As can be seen from Exhibit 1, Choi is a prolific proponent of the BitTorrent distribution system advancing the BitTorrent economy of piracy causing injury to plainitff.

///

///

## FACTS OF THE CLAIM

### IP Address

40.     An ISP grants access to the internet and the ability to send and receive information, whether in the form of an email, photo or motion picture.  To connect to the internet a user must contract with an ISP and create an account for service either directly, or through an intermediary such as a subscriber.

41.     The ISP then generally assigns each subscriber a unique IP address.  An IP address is like the address used on an envelope.  It is the identifier each defendant uses to tell the world not only where they are sending data from, but the location to where any requested data should be sent.

42.     The defendant has been identified by Century Link as Jim Choi in the instant case and is the subscriber who was assigned the specific IP address 71.222.126.243 which was used at a specific time to exchange plaintiff's motion picture though the BitTorrent peer-to-peer network.

43.     Under the BitTorrent protocol each file has a unique "hash" tied to a specific file.  In the instant case, the hash SHA1: 7e218d20d3a2b1aca336fd5f43e620592401d721 has been confirmed as being for an unauthorized copy of plaintiff's motion picture.

44.     Plaintiff has, to a reasonable degree of scientific certainty, learned the ISP used by the defendant, the torrent file copied and distributed by the defendant as identified by file hash, the BitTorrent client application utilized by the defendant, and the location of the defendant, as determined by geolocation technology.

### Conduct of Defendant

45.     Plaintiff has recorded the defendant identified herein as copying and publishing plaintiff's motion picture via BitTorrent, as plaintiff's investigator has downloaded the motion picture via BitTorrent from the defendant and others.

46.     Defendant accessed the internet as the subscriber to his Century Link account. Defendant initiated his infringing conduct by first intentionally logging into one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows and software.  Defendant then intentionally obtained a torrent file identified by a "hash" which was attached to plaintiff's motion picture from the index and intentionally loaded that torrent file into a computer program or client designed to read such files.

47.     With the torrent file intentionally loaded by defendant, his BitTorrent client, µTorrent 3.1.3, used the BitTorrent protocol to initiate connections with possibly hundreds of other users possessing and uploading or sharing copies of the digital media described in that same hash, namely, plaintiff's motion picture.  As the motion picture was copied to defendant's computer piece by piece, these downloaded pieces of plaintiff's motion picture were then immediately published and made available for upload to others users' computers.  Thus, Choi not only participated in the BitTorrent by downloading the plaintiff's motion picture, but also uploaded or published the work via BitTorrent.

48.     On information and belief, Choi's conduct was unauthorized and in violation of the license and terms of access to the internet through Century Link.

49.     Upon information and belief, the defendant was a willing and knowing participant in the infringing of plaintiff's copyright.

50.     Upon information and belief, the defendant also obtained compensation or personal benefit through making plaintiff's motion picture available to others.

///

///

///

## CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

51. Defendant, without the permission or consent of plaintiff, copied and distributed plaintiff's motion picture through a public BitTorrent network.

52. Defendant's actions infringed plaintiff's exclusive rights under The Copyright Act.

53. Defendant's conduct has been willful, intentional, in disregard of and indifferent to plaintiff's rights.

54. As a direct and proximate result of defendant's conduct, plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

55. Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

56. The conduct of defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

57. Pursuant to 17 U.S.C. §§ 502 and 503, plaintiff is entitled to injunctive relief prohibiting defendant from further contributing to the infringement of plaintiff's copyrights and ordering that defendant destroy all copies of plaintiff's motion picture made in violation of plaintiff's rights.

## DAMAGES

1. With the specific intention of deterring internet piracy such as has been committed by defendant in this case, Congress significantly increased the maximum award for willful infringement from $100,000 to $150,000 per title.

2. Plaintiff has been damaged and claims statutory damages of $150,000 from defendant pursuant to 17 U.S.C. § 504(c)(2).

Notice of Further Claims

3. While the relief prayed for by plaintiff is less than may be allowed by law, plaintiff provides notice of the potential damages available under various laws, such as 17 U.S.C. § 504 which include:

 a. Defendant's profits;

 b. Plaintiff's full damages;

 c. All costs of this action; and

 d. Broad equitable relief, including the seizure or destruction of all infringing articles and equipment used in the infringement, including any computers used.

4. Plaintiff provides notice it may have enforceable rights in other titles copied by defendant and provides notice that the statutory damages available to plaintiff are $150,000 per title.

5. Plaintiff provides that the trademark VOLTAGE PICTURES has been registered with the State of Oregon, pursuant to ORS 647.015 and plaintiff has rights available to it under ORS 647.105 et seq.

6. Plaintiff gives notice it may move to elect the full scope of relief available against defendant as discovery proceeds.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendant as follows:

A. For entry of permanent injunction enjoining defendant from infringing plaintiff's rights in plaintiff's motion picture, including without limitation by using the internet to reproduce or copy plaintiff's motion picture, to distribute plaintiff's motion picture, or to make plaintiff's motion picture available for distribution to the public, except pursuant to a

lawful license or with the express authority of plaintiff. And further directing defendant to destroy all unauthorized copies of plaintiff's motion picture.

B.         For $150,000 damages pursuant to 17 U.S.C. § 504.

C.         For plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505.

D.         For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

DATED: May 21, 2013

Respectfully submitted,

CROWELL LAW

/s/Carl D. Crowell
Carl D. Crowell, OSB No. 982049
Of attorneys for the plaintiff